# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

SERMARIO LAQUEZ BROWN,

    Plaintiff,

v.

CAROLYN W. COLVIN,

    Defendant.

CIVIL ACTION NO.: 2:14-cv-184

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("the ALJ" or "ALJ Davenport") denying his claim for child's social security disability benefits and supplemental security income. Plaintiff urges the Court to reverse the ALJ's decision and award him benefits, or in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner.

## BACKGROUND

Plaintiff protectively filed applications for child's social security disability benefits and supplemental security income on December 16, 2010, alleging that he became disabled on September 24, 1991,[1] due to a history of spina bifida, hydrocephalus, and borderline intellectual functioning. (Doc. 7-6, pp. 6, 13.) After his claim was denied initially and upon reconsideration,

---

[1] Although claimant alleged an onset date of 1991, the claimant filed his application for child's social security disability benefits after his eighteenth birthday. Accordingly, the ALJ determined that claimant's eighteenth birthday is the earliest date he may be considered disabled.

Plaintiff filed a timely request for a hearing.  (Id. at pp. 90–91.)  On April 24, 2013, ALJ Davenport conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified in Brunswick, Georgia, while the ALJ was in Savannah, Georgia.  Kim E. Bennett, a vocational expert, also appeared at the hearing.  ALJ Davenport found that Plaintiff was not disabled within the meaning of the Act.  (Doc. 7-3, p. 20.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  (Doc. 7-2, p. 2.)

Plaintiff, born on September 24, 1991, was twenty-one (21) years old when ALJ Davenport issued his final decision.  He has a high school education.  (Doc. 7-7, p. 3.)  Plaintiff has no relevant past work experience.  (Doc. 7-3, p. 19.)

## DISCUSSION

### I.  The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled.  20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  The first step determines if the claimant is engaged in "substantial gainful activity."  Yuckert, 482 U.S. at 140.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.  Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude

2

substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff has never engaged in substantial gainful activity. (Doc. 7-3, p. 13.) At Step Two, the ALJ determined Plaintiff had a history of spina bifida, hydrocephalus, and borderline intellectual functioning, conditions considered "severe" under the Regulations. (Id.) However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id. at p. 14.) ALJ Davenport noted that Plaintiff's only lingering symptom attributable to spina bifida and hydrocephalus was mild left-sided weakness. ALJ Davenport also noted that Plaintiff's active lifestyle and presentation to examiners were inconsistent with

3

severe cognitive impairment.  (Id. at pp. 14–15.)  At Step Four, the ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform heavy work with no more than frequent balancing, climbing, stooping, crouching, kneeling, and exposure to wet, humid conditions and extreme temperatures.  (Id. at p. 16.)  ALJ Davenport further found that Plaintiff had the residual functional capacity to stand, walk, and sit eight hours per eight-hour workday, walk two hours at a time, frequently drive, and no more than occasionally use his left foot to operate machinery.  (Id.)  In making this determination, ALJ Davenport found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms not credible.  (Id. at pp. 17–18.)  He noted that Plaintiff's active lifestyle and denial of weakness, numbness, and diarrhea to treating physicians belied Plaintiff's allegations of left-sided weakness and bowel incontinence.  (Id. at pp. 16–17.)  ALJ Davenport also noted that Plaintiff's ability to recall, remember, and spell in cognitive tests, read the Bible daily, and play drums in a church band contradicted his claim that he is unable to work due to cognitive deficits.  (Id. at pp. 16–19.)  At the final step, the ALJ concluded Plaintiff was able to make adjustments to other work in the national economy, considering his age, education, and work experience.  (Id. at p. 19.)

## II.     Issues Presented

Plaintiff first contends substantial evidence does not support the ALJ's finding that Plaintiff's left-sided weakness is not a severe impairment.  Plaintiff further contends the ALJ erred by failing to explain why he discredited the opinion of a consultative examiner after according that examiner's opinion "great weight."  Plaintiff also argues that substantial evidence does not support the ALJ's conclusion that Plaintiff is not disabled under Social Security Listing 12.05C.  Specifically, Plaintiff avers the ALJ erroneously disregarded Plaintiff's IQ scores,

manifestations of developmental delays in adaptive functioning before age twenty-two (22), and additional physical impairments. Plaintiff also asserts the ALJ failed to articulate reasons for finding Plaintiff not credible.

## III. Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

**IV. Step Two Determination: Left-Sided Weakness**

Plaintiff argues that ALJ Davenport improperly concluded that Plaintiff's left-sided weakness is not a severe impairment. (Doc. 9, p. 9.) To demonstrate the severity of his impairment, Plaintiff cites the opinion of Dr. Steven Pappas, a consultative neurological examiner. (Id. at p. 10.) Dr. Pappas opined that Plaintiff's left-sided weakness prevents him from walking more than four hours per eight-hour work day. (Id.; Doc. 7-10, p. 165.) Defendant responds that substantial evidence supports the ALJ's finding that Plaintiff's left-sided weakness is not a severe impairment. (Doc. 10, p. 4.)

At step two, the ALJ must make a "threshold inquiry" as to the medical severity of the claimant's impairments. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1520a(a), 404.1523, 416.920(a)(4)(ii), (c), 416.920a(a), & 416.923. "[T]he finding of any severe impairment, whether . . . it qualifies as a disability and whether . . . it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, such as the abilities and aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521(a)–(b) & 416.921(a)–(b). In other words, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." McDaniel, 800 F.2d at 1031; see Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam) (noting that the mere existence of impairments does not reveal the extent to which

they limit the claimant's ability to work). Pertinent examples of "basic work activities" include: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b); Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 857 (11th Cir. 2013).

Substantial evidence supports the ALJ's determination that Plaintiff's left-sided weakness is not a severe impairment. ALJ Davenport found that Plaintiff's active lifestyle indicates his left-sided weakness is not severe, noting that Plaintiff regularly does yard work, cleans the kitchen, washes dishes, launders clothing, vacuums, and is learning to drive. (Doc. 7-3, p. 15; Doc. 7-9, p. 117.) The ALJ also noted that Plaintiff has repeatedly denied weakness or numbness to treating physicians and that Plaintiff's gait and reflexes have routinely been normal. (Doc. 7-3, p. 17; Doc. 7-9, pp. 87, 89, 92; Doc. 7-10, p. 29.) Though one consultative examiner opined that Plaintiff's left-sided weakness reduced the number of hours he could walk per day, (doc. 7-10, p. 165), the Court may not "reweigh the evidence[ ] or substitute [its] judgment for that of the Secretary." Dyer, 395 F.3d at 1210. "Even if . . . the evidence preponderates against the Secretary's decision, [the Court] must affirm if the decision is supported by substantial evidence." Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). ALJ Davenport's determination that Plaintiff's left-sided weakness does not interfere with his ability to work is supported by the substantial evidence discussed above. Accordingly, the ALJ's determination that Plaintiff's left-sided weakness is not a severe impairment was proper.

## V.     Partial Rejection of Consultative Examiner's Opinion

Plaintiff argues the ALJ erred by according "great weight" to Dr. Pappas' opinion, yet failing to explain why he disregarded a portion of that opinion. (Doc. 9, p. 10.) According to Plaintiff, ALJ Davenport's conclusion that Plaintiff is able to walk eight hours per eight-hour work day is not supported by substantial evidence because Dr. Pappas opined Plaintiff could walk only four hours per eight-hour work day. (Id. at p. 9.) Plaintiff contends that the ALJ's failure to incorporate Plaintiff's four-hour walking limitation into his residual functional capacity determination is, therefore, inconsistent with the remainder of the decision and requires reversal. (Id. at pp. 10–11.)

Defendant responds that the ALJ's residual functional capacity determination is proper because he implicitly rejected the portion of Dr. Pappas' opinion regarding Plaintiff's four-hour walking limitation and clearly articulated his reasons for doing so. (Doc. 10, pp. 6–7.) In the alternative, Defendant contends that any error was harmless. (Id. at p. 7.)

An ALJ must state with particularity the weight given to different medical evidence and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). An ALJ may not arbitrarily pick and choose facts from the medical evidence to support his conclusion without articulating specific, well-supported reasons for crediting some evidence while discrediting other evidence. Marbury v. Sullivan, 957 F.2d 837 (11th Cir. 1992). However, the Eleventh Circuit has held that an ALJ may make a determination implicitly. Kemp v. Astrue, 308 F. App'x 423, 426 (11th Cir. 2009) (citing Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986)). In Kemp, the ALJ did not articulate the weight he accorded to disability ratings provided by the Veteran's Administration ("VA") but referred to those ratings throughout the decision. Id.

at 426. The Eleventh Circuit found that, by continuously referencing the VA's ratings and relying on other portions of the VA's findings, the ALJ implicitly accorded great weight to the VA's disability ratings despite his failure to precisely articulate that finding. Id.

Similarly, here, ALJ Davenport did not clearly articulate his reason for rejecting the portion of Dr. Pappas' opinion stating that Plaintiff could walk no more than four hours per eight-hour work day. However, just as the ALJ in Kemp implicitly accorded great weight to the VA ratings by referencing the ratings throughout his decision, ALJ Davenport implicitly rejected the portion of Dr. Pappas' opinion regarding Plaintiff's walking limitations by clearly referencing his reasons for doing so throughout the decision. In his decision, ALJ Davenport noted Plaintiff's repeated denials of weakness and numbness and noted that Plaintiff's gait and reflexes have routinely been normal. (Doc. 7-3, p. 17; Doc. 7-9, pp. 87, 89, 92; Doc. 7-10, p. 29.) ALJ Davenport also referred to Plaintiff's level of physical activity throughout the decision, noting that Plaintiff regularly cleans the kitchen, washes dishes, launders clothing, vacuums, and is learning to drive. (Doc. 7-3, p. 15; Doc. 7-9, p. 117.) By clearly referencing facts that contradict Dr. Pappas' opinion that Plaintiff can walk no more than four hours in an eight-hour work day, the ALJ implicitly rejected this portion of Dr. Pappas' opinion and clearly articulated reasons for doing so.

Similarly, Plaintiff argues that the ALJ's decision is inconsistent and, therefore, requires remand to determine whether the decision is rational on the merits and supported by substantial evidence. (Doc. 9, p. 11.) Plaintiff's argument is unavailing. The ALJ's prior determination that Plaintiff's left-sided weakness is a non-severe impairment is consistent with his implicit rejection of Dr. Pappas' finding that Plaintiff is able to walk only four hours per eight-hour work

day. Furthermore, substantial record evidence indicating that Plaintiff leads an active lifestyle supports ALJ Davenport's conclusion that Plaintiff is able to walk more than four hours per eight-hour work day. Furthermore, Plaintiff has denied weakness and numbness to treating physicians. (Doc. 7-9, pp. 87, 89, 92; Doc. 7-10, p. 29.) Moreover, ALJ Davenport tailored his residual functional capacity finding to accommodate Plaintiff's non-severe left-sided weakness by restricting the use of Plaintiff's left foot to occasional use. (Doc. 7-3, p. 16.) Therefore, any error attributable to ALJ Davenport's failure to separately explain his decision to reject the specific portion of Dr. Pappas' opinion regarding a walking limitation is harmless.

**VI.     Listing 12.05C**

To meet Listing 12.05 ("intellectual disability"),[2] "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). These requirements are referred to as the Listing's "diagnostic criteria." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].") In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. See id. § 12.05. Under paragraph C, a claimant must show that he

---

[2] Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,4501 (Aug. 1, 2013) (to be codified at 20 C.F.R. Pt. 404, Subpt. P, App. 1). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." Id. at 46,499. This change "d[id] not affect the actual medical definition of the disorder or available programs or services." Id. at 49,500. "So while the ALJ, whose decision issued before the change took effect, and the parties use the old terminology, we follow the agency's new nomenclature." Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 911 (11th Cir. 2015).

has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

A valid IQ score of 60 to 70 satisfies the first prong of paragraph C and creates a rebuttable presumption that the claimant satisfies the diagnostic criteria for intellectual disability." Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir. 2001). "At the same time, it is well established that such a presumption does not arise where a qualifying IQ score is inconsistent with other record evidence concerning [the claimant's] daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)). "But once the ALJ accepts an IQ score as valid and finds that the claimant's impairments meet or medically equal the other criteria of listing 12.05C, the disability determination cannot be based on the claimant's age, education, or work experience." Id. "In sum, a claimant proves that she meets listing 12.05C by establishing the diagnostic criteria for intellectual disability, including deficits in adaptive functioning; showing onset before age 22; producing a valid, qualifying IQ score; and exhibiting the requisite deficits in work-related functioning." Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 911 (11th Cir. 2015).

### A. IQ Scores

Plaintiff argues that ALJ Davenport failed to properly consider Plaintiff's IQ scores by "plac[ing] too much emphasis on Plaintiff's activities of daily living[.]" (Doc. 9, p. 13.) However, the Eleventh Circuit "has recognized that a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." Lowery, 979 F.2d at 837 (citing Popp, 779 F.2d

11

at 1499). The ALJ may appropriately consider medical reports, daily activities, behavior, and other evidence in the record when making this determination. Popp, 779 F.2d at 1499.

A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Dyer, 395 F.3d at 1210. Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id. ALJ Davenport concluded that Plaintiff's IQ scores are inconclusive of intellectual disability when viewed in conjunction with Plaintiff's daily activities which include chores, reading, and extra-curricular activities. (Doc. 7-3, pp. 14–15.) Accordingly, substantial evidence supports the ALJ's decision, and this Court will not reweigh the evidence.

**B.     Developmental Delays in Adaptive Functioning Prior to Age Twenty-Two**

Plaintiff also argues that ALJ Davenport erred by failing to conclude Plaintiff experienced developmental delays in adaptive functioning before age twenty-two. (Doc. 9, p. 16.) Plaintiff points to a 2003 report documenting his enrollment in special education and his difficulties with toileting skills, fine motor skills, and poor social and speaking skills to demonstrate that he suffered developmental delays before the age of twenty-two. (Id. at pp. 15–16; Doc. 7-9, pp. 13–18.)

Defendant acknowledges that Plaintiff exhibited developmental delays in adaptive functioning in 2003, at age eleven. (Doc. 10, p. 11.) However, Defendant maintains the 2003 report is irrelevant because Plaintiff exhibited significantly improved independence and adaptive functioning by age eighteen. (Id.)

An ALJ's error "only constitutes reversible error if it created an evidentiary gap that caused unfairness or clear prejudice." See Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th

Cir. 2008). While the record establishes that Plaintiff manifested deficits in adaptive behavior at age eleven, the record also establishes that, by age eighteen, Plaintiff no longer manifested these deficits in adaptive behavior. Additionally, because Plaintiff filed his application for child disability benefits after his eighteenth birthday, the ALJ limited his review to whether Plaintiff became disabled on or after his eighteenth birthday. (Doc. 7-3, p. 11, n.1.) Therefore, the ALJ's focus upon Plaintiff's medical records and behavior after age eighteen, as opposed to his childhood medical records and behavior, did not create an evidentiary gap that unfairly prejudiced Plaintiff.

### C. Additional Significant Impairment

Plaintiff also argues that the ALJ erred by failing to find that Plaintiff suffers a physical impairment that imposes an additional and significant work-related limitation. (Doc. 9, p. 16.) Plaintiff maintains the ALJ's decision is not supported by substantial evidence because, in addition to his substandard IQ scores, Plaintiff has a history of spina bifida and hydrocephalus and suffers mild left-sided weakness. (Id.)

Defendant responds that the ALJ's determination was proper. (Doc. 10, p. 10.) Defendant does not dispute whether Plaintiff suffered from spina bifida and hydrocephalus in the past and acknowledges that Plaintiff complained of left-sided weakness to one examiner. Nevertheless, Defendant argues that substantial evidence supports the ALJ's finding that these limitations do not inhibit Plaintiff's ability to work. (Id. at pp. 10–11.)

"Under paragraph C, a claimant must show that he has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Hodges, 276 F.3d at

13

1268–69. The ALJ determined that Plaintiff's medically determinable physical impairments of left-sided weakness and a history of spina bifida and hydrocephalus, either singly or in combination, caused no more than minimal limitations in Plaintiff's ability to perform basic work activities and were not severe. (Doc. 7-3, pp. 14, 17–18.) The ALJ noted that, even though Plaintiff's cognitive function scores fall below seventy (70), he is able to play drums at church for money, clean the kitchen, wash dishes, do yard work, launder clothing, vacuum, and read the Bible. (Id. at p. 15.) The ALJ also noted that Plaintiff's long-term job readiness teacher opined that Plaintiff would probably be capable of obtaining employment in an entry-level job, based upon her three-year observation of Plaintiff's performance during vocational trainings. (Id.)

Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's left-sided weakness and history of spina bifida and hydrocephalus do not significantly limit Plaintiff's ability to work. Because Plaintiff has failed to present evidence of an intellectual disability with limitations associated with Listing 12.05C, this enumeration of error is without merit.

### VII.    Credibility

Plaintiff argues that ALJ Davenport also erred by improperly discrediting Plaintiff's testimony regarding his subjective complaints of pain. (Doc. 9, p. 17.) Plaintiff avers that medical evidence of record verifies his testimony that he suffers from left-sided weakness and that the ALJ abused his discretion by substituting his opinion for the opinions of Plaintiff's medical providers. (Id. at pp. 17–18.) Defendant argues that substantial evidence supports ALJ Davenport's adverse credibility determination. (Doc. 10, p. 12.)

"If a plaintiff testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the

claimant's allegations of completely disabling symptoms." Dyer, 395 F.3d at 1210 (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).

Review of ALJ Davenport's decision reveals that he considered Plaintiff's medical condition as a whole and clearly articulated the reasons behind his credibility determination. First, ALJ Davenport cited multiple medical records throughout his decision and noted that, while Plaintiff exhibited mild left-sided weakness during a consultative examination, he denied weakness and numbness to his treating physicians and exhibited a normal gait during several routine visits. (Doc. 7-3, p. 17; Doc. 7-9, pp. 87, 89, 92; Doc. 7-10, p. 29.) Similarly, the ALJ found Plaintiff's testimony regarding the extent of his limitations inconsistent with the record. (Doc. 7-3, pp. 17–19.) Plaintiff testified that he cannot stand for extended periods of time due to a weak left leg. (Doc. 7-2, p. 40.) Plaintiff also testified that he is unable to work because he has episodes of diarrhea each week that require him to spend up to thirty minutes in the restroom at a time. (Id. at pp. 42–43.) Plaintiff further testified that he must empty his urostomy bag once every thirty minutes. (Id. at p. 42.) ALJ Davenport noted that Plaintiff has not complained of diarrhea or reported any difficulties with his urostomy bag to treating physicians. (Doc. 7-3, p. 17.) The ALJ further noted that Plaintiff's job readiness teacher did not cite toileting difficulties as a work-related limitation. (Id.) Finally, the ALJ noted that Plaintiff's daily completion of chores, regular attendance of church, and ability to play the drums for a church audience suggest that Plaintiff does not suffer the level of incontinence he claims. (Id.)

15

ALJ Davenport also found Plaintiff's claim that he is unable to work due to cognitive defects not credible. (Id. at p. 18.) First, ALJ Davenport cited consultative examiner Dr. Marc Eaton's opinion that, while Plaintiff's cognitive function scores fall below seventy (70), his daily activities and presentation during the exam indicate that Plaintiff functions in the borderline range, as opposed to the mild mental retardation range. (Id. at p. 15.) Similarly, the ALJ cited Plaintiff's ability to read the Bible and play a musical instrument as inconsistent with the level of cognitive dysfunction he alleges. (Id.)

Credibility determinations are the province of the ALJ, and the Court will not disturb a clearly articulated credibility finding absent substantial evidence. Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014). Because substantial evidence supports ALJ Davenport's credibility finding and ALJ Davenport clearly articulated the reasons cited above for finding Plaintiff's testimony not credible, this enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner and **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 20th day of January, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA